503 So.2d 340 (1987)
Edward Fletcher EYSTER, Appellant,
v.
Caroline H. EYSTER, Appellee.
No. BO-335.
District Court of Appeal of Florida, First District.
January 20, 1987.
On Motion for Rehearing and Rehearing March 11, 1987.
*341 David H. Levin and Charles J. Kahn, Jr. of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
T. Sol Johnson of Johnson, Green & Locklin, Milton, for appellee.
On Motion for Rehearing and Rehearing En Banc March 11, 1987.
SMITH, Judge.
The petitioner (ex-husband) seeks a writ of certiorari, directed to the trial court's order compelling him to answer interrogatories, in an action by the ex-wife seeking a modification of alimony and the payment of substantial medical bills and expenses. The interrogatories request information concerning the ex-husband's income, assets and liabilities. Because the ex-husband has agreed that he is capable of responding to his former wife's petition for modification "in a reasonable amount of alimony determined by the trial court," he contends he should not be compelled to answer these interrogatories. For the reasons expressed below, we find no departure from law sufficient to give us jurisdiction and deny the petition.
Two hearings were held on the wife's motions to compel answers to the interrogatories and after each the trial court entered orders compelling responses to the interrogatories. After the first order, rather than give the financial information requested, the husband replied to each interrogatory that "he is capable of responding to the respondent-former wife in a reasonable amount of alimony determined by the *342 trial court." This necessitated the wife filing a second motion to compel. As noted by the trial judge, no evidence was introduced at either hearing. In the lengthy and detailed order under review, the trial court set forth the history of the litigation between the parties since their divorce, the circumstances of the ex-wife which allegedly demonstrate increased need, and the position of the parties with respect to this discovery request. The trial judge recognized that in this court's decision, Granville v. Granville, 445 So.2d 362 (Fla. 1st DCA 1984), this court refused to permit inquiry into the former husband's financial circumstances. He distinguished Granville on the grounds that there, revelation of the husband's financial circumstances would have damaged his career as a financial forecaster, whereas in this case, there was no evidence of any adverse impact or financial disadvantage which would be visited upon the husband should he comply with the discovery obligations ordered by the court. The trial court noted that under section 61.08, Florida Statutes (1985), it was required in determining the proper award of alimony to consider all relevant economic factors including, but not limited to, the financial resources of each party. The court concluded:
It is fundamental under Florida case law and authority that a trial Court in determining the amount of an alimony award must consider not only the needs of the spouse seeking alimony, but also the ability of the responding spouse to pay the alimony.
In order for this Court to determine "what is reasonable" the Court must have available to it, in order to exercise it's [sic] discretion in a sound and reasonable fashion, some knowledge of the financial resources available to the responding party as well as the needs of the party seeking support.
Because the parties have failed to offer any evidence to this Court that would demonstrate any irreparable harm or unique or unusual circumstances which might justify the restrictive discovery process before the First District Court in Granville, it is,
ORDERED, ADJUDGED and DECREED that the second motion for an order compelling answers to discovery is granted, and the petitioner/husband shall furnish, in reasonable detail, the answers to the twelve interrogatories which were previously propounded....
The husband seeks certiorari review of this order.
We recognize there are many cases in which courts have reviewed, by certiorari, errors in granting discovery. Nevertheless, "[i]t is not every error in the court below which creates common law certiorari jurisdiction in this court." Ford Motor Co. v. Edwards, 363 So.2d 867 (Fla. 1st DCA 1978). Before review by certiorari will be granted, the petitioner must demonstrate that the order complained of was rendered by the court in excess of its jurisdiction or does not conform to the essential requirements of the law and may cause material injury through subsequent proceedings for which the remedy by appeal will be inadequate. Id.; Esman v. Board of Regents of the State of Florida, 425 So.2d 156 (Fla. 1st DCA 1983).
As stated by the Florida Supreme Court in Combs v. State, 436 So.2d 93, 95-96 (Fla. 1983):
In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
It is this discretion which is the essential distinction between review by appeal and review by common law certiorari. [citation omitted] A district court may refuse to grant a petition for common-law certiorari even though there may have been a *343 departure from the essential requirements of law. [citation omitted] The district courts should use this discretion cautiously so as to avert the possibility of common-law certiorari being used as a vehicle to obtain a second appeal.
The comments of Justice Boyd in his concurring opinion in Jones v. State, 477 So.2d 566, 569 (Fla. 1985), are instructive:
It is important to distinguish the concept of a "departure from the essential requirements of law" from the concept of legal error. On a petition for the common-law writ of certiorari, the legal correctness of the judgment of which review is sought is immaterial. The required "departure from the essential requirements of law" means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice. The writ of certiorari properly issues to correct essential illegality but not legal error.
Turning to the issue at hand, we note that the trial court possesses broad discretion in granting or refusing discovery motions and also in protecting the parties against possible abuse of discovery procedures, and only an abuse of this discretion will constitute fatal error. Orlowitz v. Orlowitz, 199 So.2d 97 (Fla. 1967).
In this proceeding, the husband did not stipulate that he will pay whatever amount the trial court awards as increased alimony, provided the wife demonstrates need. Instead, he only agreed to pay a "reasonable" amount of alimony.[1] After thoroughly reviewing the dispute between the parties and distinguishing the case relied upon by the ex-husband, the court concluded that it needed the whole factual picture to determine "reasonable" alimony.
In Orlowitz, the issue before the Florida Supreme Court was whether the chancellor had erred in granting the husband's motion for protective order prohibiting the wife from inquiring into the husband's financial worth in the parties' divorce action. In resisting discovery as to his assets, the husband represented to the court that he was ready, willing and able to answer any reasonable order for costs, fees or other allowances. Citing conflict with Parker v. Parker, 182 So.2d 498 (Fla. 4th DCA 1966), in which the district court of appeal had affirmed a trial court order granting a similar discovery motion, despite the fact that the husband had filed a written admission that he was worth $5,000,000 and that he was well able to satisfy the needs of the wife and children as alleged by her, the Supreme Court quoted with approval the following language from the Parker opinion:
We must say, based upon our understanding of the Rules and the philosophy behind them, that we do not look with favor upon the husband's position in not wishing to reveal any of the details of his financial position and his effort to bridle the dependents' discovery rights by substituting his secondary non-verifiable conclusion in lieu of primary detailed facts. The adversary and the court are entitled to the whole factual picture to the end that an independent complete understanding and evaluation may be had.
Orlowitz, 199 So.2d at 98. The Supreme Court concluded that the chancellor had committed fatal error in immunizing the husband from all inquiry concerning his financial worth.
On this record, we cannot say the trial court fatally abused its discretion in determining information concerning the husband's financial condition was relevant to the alimony issue so as to be within the permissible scope of discovery under rule 1.280(b)(1), Florida Rules of Civil Procedure. Ford Motor Co. v. Edwards, 363 So.2d at 870. The cases cited by the husband[2] *344 are distinguishable and do not require a contrary conclusion.
By our ruling, we are not suggesting that the trial court revisit the issues of the needs and abilities of the parties at the time of the divorce proceeding, since these issues were decided in the final divorce decree which is res judicata with respect to the facts then existing. Chastain v. Chastain, 73 So.2d 66 (Fla. 1954). Instead, the issues before the trial court, as framed by the wife's pleadings, are limited to the wife's substantial change in financial needs and the ability of the husband to meet these increased needs.
Accordingly, we conclude the ex-husband has failed to demonstrate a departure from the essential requirements of law sufficient to warrant our exercise of certiorari jurisdiction.
SHIVERS, J., concurs.
ZEHMER, J., dissents with opinion.
ZEHMER, Judge (dissenting).
For the reasons hereafter expressed, I would grant review by writ of certiorari and quash the order which requires the former husband to provide disclosure of his financial circumstances despite his stipulated ability and willingness to pay any reasonable amount of increase in alimony.
The lower court has erroneously treated the issues raised by the former wife's motion for modification of alimony as requiring consideration of the same facts and circumstances as the initial determination of alimony in the original dissolution hearing, in which inquiry into the respective financial circumstances of each party is usually relevant to issues placed in dispute by the pleadings, such as the respective financial ability of each party and the standard of living enjoyed during the marriage. The trial court's confusion of these fundamentally different issues is plainly evident from the portion of the lower court order quoted in the majority opinion, which refers to provisions in section 61.08, Florida Statutes (1985), as requiring consideration of all relevant economic factors, including the financial resources of each party, in setting alimony, and which further states that the court must have before it some knowledge of the husband's ability to pay in order to determine what amount of alimony is reasonable. Both the statute and common law rule cited by the trial court are applicable in deciding an award of alimony in the original dissolution proceeding wherein issues of the parties' standard of living and other collateral issues may be in dispute; but the former husband's financial circumstances are not relevant in alimony modification proceedings to address the former wife's claim of increased financial need if the former husband stipulates to his financial ability to pay a reasonable increase in alimony. See Calvo v. Calvo, 489 So.2d 833 (Fla. 3d DCA 1986); Alterman v. Alterman, 361 So.2d 773 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1361 (Fla. 1979).
In this modification proceeding, since the husband admits to being able to pay any reasonable increase in alimony, the sole disputed issue is whether the wife, due to changed financial need, is entitled to an increase in alimony; and the court should not even permit, let alone require, discovery of the former husband's financial ability to pay the requested increase. Palmar v. Palmar, 402 So.2d 20 (Fla. 3d DCA 1981). The former wife's motion for modification should identify the basis and amount of her increased need, and the former husband's stipulated ability and willingness to pay any reasonable amount set by the court within the requested range should be binding upon him, the same as any other admission by a defendant in answer to the plaintiff's allegations seeking affirmative relief. Once the former husband's ability to pay is admitted, consideration of that factor is no longer a matter of discretion with the trial court; it must be *345 accepted as established. There is simply no legally sufficient reason for the trial court to permit the former wife to engage in discovery and litigation of undisputed and admitted issues concerning the former husband's financial situation.
The majority opinion's characterization of the former husband's stipulation to pay a "reasonable" amount of alimony as not being equivalent to an unqualified agreement to pay any reasonable amount awarded by the court misconstrues the intent and purpose of the stipulation. By that stipulation, the former husband has agreed that he has the financial ability to pay whatever reasonable amount is set by the court on the basis of the former wife's demonstrated needs, and that is all the law requires of him. The former husband's financial circumstances would be relevant only if his ability to pay an increased amount were in dispute (his ability to pay the current alimony having been established and adjudged in the original dissolution proceeding), so his reservation of the right to review on appeal the reasonableness of the wife's need and the amount awarded by the trial court is not in any way inconsistent with the intent and purpose of his stipulation, and does not operate to make his personal finances a material and relevant matter.
Moreover, the majority's allusion to this court's inability, in the absence of evidence of the husband's financial standing, to give adequate appellate review to the reasonableness of the amount set by the trial court should either party contest it on appeal, improperly suggests that the former husband could assert his inability to pay the amount awarded despite his stipulation to the contrary. It also erroneously treats the setting of alimony in this modification proceeding as if that issue involved the same considerations that are present when setting alimony in the original dissolution proceedings. This confusion of issues is made clear by the majority's reliance on Orlowitz v. Orlowitz, 199 So.2d 97 (Fla. 1967), a case that involved the amount of alimony to be awarded the wife in the original dissolution proceeding wherein she alleged that the husband was a millionaire, and the husband denied this allegation but agreed that he was "ready, willing and able to answer any reasonable order for costs, fees or other allowances." 199 So.2d at 97. The supreme court held the trial court's order disallowing discovery of the husband's financial ability constituted error because it not only prevented the wife "from showing the husband's ability to pay and his standard of living and that of the parties during their ill-fated marriage," it also "prevented the wife's requiring the husband to produce evidence or answer questions which would reflect on the issues of his residency and commission of adultery by him with an alleged secretary," all of which had been raised by the wife's pleadings and were in dispute. 199 So.2d at 98. Hence, Orlowitz is not applicable here because no such collateral issues to which the husband's financial information might be relevant are disputed in this case; the sole issue is the former wife's increased need for alimony, and the setting of that amount is not dependent on the husband's financial resources in view of his admitted ability to pay. Alterman v. Alterman, 361 So.2d at 774. I find the majority opinion's approval of discovery in this case completely inconsistent with the above cited decisions.
Whether we should review the trial court's order by common law certiorari, however, is a closer and more troublesome issue. The applicable standard for review by certiorari requires, as stated in the majority opinion, a departure from the essential requirements of the law. Certainly no one takes issue with the quoted statements from opinions of this and the supreme court concerning the need to show not only a substantial departure from the essential requirements of law but also a material injury that cannot be remedied by appeal from final judgment. Nevertheless, we have reviewed by common law certiorari a discovery order requiring financial disclosure by the former husband incident to a modification proceeding wherein his ability to pay was held irrelevant. Granville v. Granville, 445 So.2d 362 (Fla. 1st DCA 1984). The Third District has also approved granting a writ of common law certiorari to review and quash an order *346 compelling discovery of a former spouse's financial condition without any further showing of irremediable injury when her finances were obviously irrelevant to any issue in dispute. Calvo v. Calvo, 489 So.2d at 834. I would do likewise in this case, as I am unable to agree with the majority opinion that denial of the writ is consistent with the Third District's acceptance of review by certiorari in Calvo.
I consider the trial court's express ruling, now approved by this court, a serious departure from the essential requirements of the law. Such ruling, unless corrected at this time, will result not only in the unwarranted disclosure of personal confidential information, but also will improperly transform this proceeding from one to determine the reasonableness of the former wife's alleged financial needs to one focusing on how much more the husband is now able to pay based on his apparently improved financial circumstances since the judgment of dissolution. Moreover, should the trial court admit evidence of the former husband's financial resources, as is seemingly approved in the majority opinion, and set the amount of additional alimony based on its consideration of such evidence, the petitioner would have no meaningful right of appeal from such an order; for the appellate court must presume the trial court order is correct and the propriety of considering such evidence is already approved in the majority opinion. The injection of this undisputed issue into the proceedings below will serve only to compound the confusion of issues and error already committed by the trial court, and will improperly deprive petitioner of protection from patently harassing discovery and unwarranted disclosure of confidential information guaranteed to him by the law.

ON MOTION FOR REHEARING AND MOTION FOR REHEARING EN BANC
PER CURIAM.
The motion for rehearing is DENIED.
SMITH and SHIVERS, JJ., concur.
ZEHMER, J., dissents with written opinion.
ZEHMER, Judge, dissenting.
Petitioner's motion for rehearing en banc alleges in part:
The Eyster case has been before the trial court since 1979. The trial court is well aware, based upon the record of prior hearings, that Dr. Eyster is a wellrespected and successful neurosurgeon practicing in Pensacola. Furthermore, Dr. Eyster is a shareholder in the Medical Center Clinic, one of the largest group medical practices in this part of the country. All of these facts were developed at length before the trial court in proceedings which took place long before the present issue concerning discovery even arose. The interrogatories in question, which were attached to the original Petition for Certiorari as Appendix 2, sought detailed financial disclosure in a modification proceeding, far beyond matters of Dr. Eyster's actual income. For instance, one interrogatory seeks a listing of all intangible personal property, which would obviously include Dr. Eyster's interest in the group medical practice. Another interrogatory seeks names and addresses of persons indebted to Dr. Eyster. This would obviously require disclosure, not only of the names and addresses of patients, but also disclosure of the nature of each individual patient's obligation. Given the holding in Granville, supra, and Dr. Eyster's admission in the present case, it is very difficult to assign any supportable legal basis to an order requiring these questions to be answered under oath by Dr. Eyster.
These allegations further support the conclusion that the requested discovery in this case is patently improper and is sought primarily for purposes of harassment. Accordingly, I would grant the motions for rehearing for the reasons set forth in my dissent.
NOTES
[1] The husband has not agreed to forego any appeal as to the trial court's determination of "reasonableness." Further, should the trial court agree that the wife is entitled to a "reasonable" increase in alimony, and the wife contests the trial court's determination of reasonableness, this court would be precluded in the future from reviewing this issue if the ex-husband is protected from discovery of his financial condition.
[2] Calvo v. Calvo, 489 So.2d 833 (Fla. 3d DCA 1986); Granville v. Granville, 445 So.2d 362 (Fla. 1st DCA 1984); Palmar v. Palmar, 402 So.2d 20 (Fla. 3d DCA 1981); Schottenstein v. Schottenstein, 384 So.2d 933 (Fla. 3d DCA 1980); and Alterman v. Alterman, 361 So.2d 773 (Fla. 3d DCA 1978).